UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CHARLES GEORGE,

                Plaintiff,          **REPORT AND RECOMMENDATION**
-against-                                 **06 CV 971 (DLI) (LB)**

EQUIFAX MORTGAGE SERVICES,

                Defendant.

------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

        Plaintiff, Charles George, brings this *pro se* action pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), alleging that defendant, Equifax Mortgage Services ("EMS"), failed to conduct a reasonable reinvestigation of information on plaintiff's consumer credit report and committed fraud by reporting false credit information. Defendant moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Plaintiff opposes defendant's motion and cross-moves for summary judgment. Additionally, plaintiff moves for sanctions under Fed. R. Civ. P. 11 and moves to strike under Fed. R. Civ. P. 12(f). The Honorable Dora L. Irizarry, United States District Judge, referred these motions to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that defendant's motion for summary judgment should be granted, and plaintiff's cross-motion for summary judgment should be denied. Plaintiff's motions for sanctions and to strike are denied.

## BACKGROUND

The following facts are not in dispute, unless otherwise noted.[1]

On March 3, 2006, plaintiff filed this action against defendants Transunion Credit Bureau ("Transunion"), Experian Credit Bureau ("Experian"), JP Morgan Chase Manhattan ("Chase"), and Equifax Information Services, LLC ("Equifax"),[2] alleging violations of the FCRA. Plaintiff claims that defendants willfully made inaccurate reports on his credit file, and refused to conduct an investigation regarding these alleged inaccuracies. Plaintiff seeks $3,000 from each defendant and $15,000 in punitive damages.

The Court held several conferences to address plaintiff's complaint. See Docket entries 16, 20, 25. At the conferences, defendants produced records showing that when plaintiff disputed inaccuracies on his credit report in August of 2005, the inaccuracies were corrected. See August 17, 2006 Transcript of Civil Cause for Telephone Conference ("August Transcript") at 11-12. Thereafter, plaintiff entered into a stipulation dismissing his action against Chase, Experian and

---

[1] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Defendant filed a 56.1(a) statement; plaintiff did not file a counter-statement under 56.1(b) or include his own statement of uncontroverted material facts in support of his cross-motion for summary judgment. The Court deems the facts in defendant's Rule 56.1 statement that are not controverted as admitted. See Local Rule 56.1(c). However, the Court may not rely solely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, the Court deems admitted only those facts that are supported by admissible evidence and not controverted by the record.

[2] Plaintiff incorrectly named defendant Equifax Information Services, LLC as "Equifax Credit Bureau." See Defendant Equifax's Answer.

Transunion, which was so ordered by the Court. Document 22.[3]

On June 1, 2006, plaintiff filed a motion to join EMS as a defendant in the action.[4] EMS is a "reseller" as defined by 15 U.S.C. § 1681a(u) (a "reseller" means a consumer reporting agency that "(1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer . . . and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced"). Here, EMS purchased credit reports from Equifax, Transunion and Experian and assembled and merged the information into a "credit highlight" report to evaluate plaintiff's credit risk. Defendant's Local Civil Rule 56.1 (Def. Rule 56.1) ¶¶ 1-3; see also August Transcript at 8.

When a consumer disputes an item on his or her credit report through EMS, EMS determines if the item is incomplete or inaccurate as a result of an act or omission on its part. Id. ¶ 4. If EMS determines that the inaccuracy is not due to its own act or omission, it conveys the notice of the dispute along with all the relevant information provided by the consumer to each consumer reporting agency that provided the reseller with the information that is subject of the dispute. Id. ¶ 5.

On June 15, 2006, the Court granted plaintiff's motion to join EMS, and on June 26, 2006, plaintiff served his amended complaint on EMS alleging violations of the FCRA, 15

---

[3] Plaintiff brought a prior separate action against Chase, which was dismissed and later appealed. See September 13, 2006 Transcript of Civil Cause for Telephone Conference at 7.

[4] Although plaintiff's motion is dated June 20, 2006, it was received by the Clerk's Office on June 1, 2006.

U.S.C. §§ 1681e(b), 1681h, 1681i.[5] Plaintiff alleges that EMS knowingly, intentionally and maliciously reported false information on his December 2005 credit highlight report by using closed accounts to calculate plaintiff's credit score. Plaintiff's Amended Complaint ("Pl. Amended Complaint") at 2, 6; see also August Transcript at 8-21, 37-39 (discussing confusion regarding two different Chase bank accounts on report). He claims that he wrote to EMS on at least ten occasions over several years regarding the inaccuracies on his credit report, and that EMS responded that it was "only reporting what was being told [to] them by Transunion, Equifax and Experian." Plaintiff's Reply Motion in Opposition to Defendant's Motion for Summary Judgment ("Pl. Reply") at 2. EMS denies this allegation, asserting that plaintiff never disputed the accounts on his credit file and that it did not knowingly or willfully issue a consumer report containing false information. Def. Rule 56.1 ¶¶ 7-9.

Plaintiff claims that defendant's actions caused his credit rating to drop, which resulted in his being denied credit and being subject to higher interest rates. Pl. Amended Complaint at 2. Plaintiff also claims that his poor credit score caused him to lose hundreds of thousands of dollars in employment and business opportunities. Id. at 12-13. Plaintiff's amended complaint seeks $200,000 in actual and punitive damages under 15 U.S.C. §§ 1681n-o, as well as injunctive relief.

On July 24, 2006, plaintiff entered into a stipulation dismissing the action against Equifax. Document 26. On September 22, 2006, EMS filed its answer to the amended complaint denying plaintiff's allegations and asserting affirmative defenses. The parties conducted

---

[5] Plaintiff's amended complaint was never docketed. Nonetheless, EMS answered the amended complaint. The Amended Complaint is attached to defendant's motion for summary judgment as Exhibit B.

discovery, after which EMS moved for summary judgment on August 23, 2007.[6] On March 21, 2008, plaintiff filed a motion titled "Notice of Motion for Summary Judgment Rule 11 Violation Strike Pleading Fed. R. Civ. P. 56(c), 12(f), 11(b)" alleging that EMS's attorney, Stephanie Cope, knowingly and intentionally lied to the Court. On April 14, 2008 defendant opposed the motion, asserting that plaintiff's allegations are false, and that plaintiff failed to comply with Fed. R. Civ. P. 11(c)(2). On April 29, 2008, plaintiff replied reasserting his claims.

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law."Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248 ); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. The Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

---

[6] Defendant's motion papers refer to Equifax Mortgage Solutions as the named defendant. Equifax Mortgage Solutions is a division of Equifax Information Services, LLC, and a successor in interest to Equifax Mortgage Services.

For the purposes of defendant's motion for summary judgment, the facts here are viewed in the light most favorable to plaintiff.

However, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see Matsushita, 475 U.S. at 586-87. In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252).

Finally, "[w]here the non-moving party is proceeding *pro se*, the court must interpret that party's supporting papers liberally, that is, interpret them 'to raise the strongest possible arguments that they suggest.'" Forsyth v. Fed'n Empl. & Guidance Serv., 409 F.3d 565, 569 (2d Cir. 2005) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## DISCUSSION

### I. Statute of Limitations

EMS argues that plaintiff's cause of action accrued in May of 2004 and is barred by the statute of limitations. Under 15 U.S.C. § 1681p(1), "[a]n action to enforce any liability created under this subchapter may be brought in any appropriate United States district court . . . [within] 2 years after the date of discovery by the plaintiff of the violation that is the basis for such

liability." EMS maintains that plaintiff's admission that his claims arose when he "1st applied for a mortgage" in May of 2004 proves that his amended complaint, served on June 26, 2006, is untimely. Memorandum in Support of Motion for Summary Judgment (Def. Memo) at 5 (citing Pl. Amended Complaint at 8). EMS also argues that plaintiff may not benefit from Fed. R. Civ. P. 15(c)(1)(B) because "even assuming Plaintiff can relate his claims back to the date of the original complaint . . . [the] claims against EMS in his Amended Complaint do not arise out of the same conduct alleged in the original complaint, but instead states different claims and seeks different damages." Def. Memo at 5.

Under Fed. R. Civ. P. 15(c)(1),

> [a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(B) and (C). Thus, the three requirements for relation back are that (1) both complaints must arise out of the same conduct, transaction, or occurrence; (2) the additional defendant must have been omitted from the original complaint by mistake; and (3) the additional defendant must not be prejudiced by the delay. VKK Corp. v. National Football League, 244 F.3d 114, 128 (2d Cir. 2001).

Construing defendant's motion in the light most favorable to plaintiff, the Court should find that plaintiff's claims relate back to his original pleading and are not barred by the two-year

statute of limitations. First, both the original and amended complaint allege that defendants violated the FCRA by including inaccurate information on his credit report causing him to receive a poor credit rating.

Second, plaintiff concedes that he made a mistake and meant to sue EMS. He states, "after reviewing all information sent to me by the Credit Bureaus it is indeed Equifax Mortgage Services knowingly and [i]ntentionally always reporting this false negative information about me." Pl. Amended Complaint at 2. Additionally, this mistake is excusable where Equifax Information Services LLC and Equifax Mortgage Services have similar names and are related companies. See VKK Corp., 244 F.3d at 129 (citing William H. McGee v. M/V Ming Plenty, 164 F.R.D. 601, 606 (S.D.N.Y. 1995)) (the misidentification of similarly named or related companies is a classic case for application of Rule 15(c) relation back).

Finally, EMS has not demonstrated that it is prejudiced by the delay. Although plaintiff has not proffered any evidence demonstrating that defendant received "notice of the [original] action . . . and knew or should have known that the action would have been brought against it, but for a mistake concerning [its] identity," defendant does not raise lack of notice of the action. Defendant does state, however, that Equifax Mortgage Solutions is a division of Equifax Information Services LLC and successor in interest to EMS, and that EMS conducts business with Equifax. Def. Rule 56.1 at 1. Therefore, for the purpose of this Report and Recommendation, the Court assumes *arguendo* that EMS had knowledge of the original action and that but for a mistake concerning its identity, the action would have been timely brought against it. Accordingly, the Court should deny defendant's motion for summary judgment on statute of limitation grounds.

## II. Plaintiff's 15 U.S.C. § 1681e(b) Claim

Plaintiff alleges that EMS violated 15 U.S.C. § 1681e(b) by failing to conduct a reasonable reinvestigation to determine whether disputed information on his credit report was inaccurate. 15 U.S.C. § 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." To succeed on a 15 U.S.C. § 1681e(b) claim, a plaintiff must establish that: (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury. Whelan v. Trans Union Credit Reporting Agency, 862 F. Supp. 824, 829 (E.D.N.Y. 1994).

Here, plaintiff has not established that EMS was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report. EMS requires that the consumer first dispute the item or items on his or her credit report before conducting an investigation to determine if the dispute is the result of an act or omission on its part. Def. Rule 56.1 ¶ 4. A credit reporting agency generally has no duty to reinvestigate credit information prior to being notified of a dispute by a consumer. See Casella v. Equifax Credit Info. Serv., 56 F.3d 469, 473 (2d Cir. 1995) (holding that damages occurring prior to appellant notifying credit reporting agencies of inaccurate credit information "cannot be compensable as 'actual damages' for a violation of the FCRA"); see also Whelan, 862 F. Supp. at 830 (granting defendant summary judgment where plaintiff failed to demonstrate that he notified the credit reporting agency of inaccuracies on his

credit report prior to alleged damages).

Plaintiff contends that he notified EMS about the inaccuracies on his credit report on at least ten occasions over many years. Pl. Reply at 2. As proof, plaintiff provides letters dated August 20, 2005, and their corresponding U.S. Post Office Express Mail receipts, written to Equifax, Experian and Transunion, disputing inaccuracies on his credit report. Complaint at 17 - 25. Plaintiff also submits a letter he wrote dated June 12, 2006 and a U.S. Post Office Express Mail receipt dated July 5, 2006. See Plaintiff Exhibit (Pl. Exhibit) A. Plaintiff's August 20, 2005 letters demonstrate that he disputed information on his credit reports to Equifax, Experian and Tranunion, not to EMS. Likewise, the June 12, 2006 letter (and receipt), which is dated *after* the instant action was filed, does not demonstrate that plaintiff notified EMS of inaccuracies on his credit report prior to bringing this action.

Plaintiff also asks the Court to examine Exhibit B, which plaintiff states is a fax sent by EMS to him explaining its reporting procedures. However, Exhibit B is not an EMS fax explaining its reporting procedures; it is one page of an EMS tri-merge report dated December 10, 2005. See Pl. Exhibit B. This exhibit fails to support plaintiff's claim that he notified EMS "on at least ten occasions" of disputed items on his credit report, or that plaintiff requested EMS to conduct a reinvestigation of the disputed information.

Plaintiff states that the Court's September 13, 2006 Order directing EMS to provide plaintiff with "backup" data "proves that I contacted [d]efendants and they initiated investigation."[7] Document 62 at 2. Plaintiff is correct that the Court ordered EMS to retrieve

---

[7] The "backup" data plaintiff refers to is any information EMS received which it used to compile plaintiff's credit highlight report. Defendant was directed by the Court to send plaintiff whatever

"backup" data and to provide plaintiff with the data. See September 13, 2006 Transcript of Civil Cause for Telephone Conference ("September Transcript") at 3; see also Docket entry 37. However, this "backup" data was not meant to be used as proof that plaintiff disputed items on his credit report, it was to establish what information defendant used to compile plaintiff's credit highlight report.

The minutes from the August and September 2006 conferences reveal that the corrections made by Equifax, Experian and Transunion on plaintiff's credit reports after plaintiff contacted them may not have been reflected on EMS's December 2005 credit highlight report. August Transcript at 18. The Court understands that this may have led plaintiff to file the instant action against EMS and resulted in his extreme frustration with identifying the correct defendant. However, even assuming *arguendo* that the EMS credit highlight report contained inaccuracies, plaintiff has not demonstrated that he notified EMS of the inaccuracies prior to commencing the instant action or that EMS failed to follow reasonable procedures to assure the accuracy of its credit report under 15 U.S.C. § 1681e(b). See Podell v. Citicorp Diners Club, Inc., 914 F.Supp. 1025 (S.D.N.Y. 1996) (a credit reporting agency is not strictly liable for inaccuracies in a credit report, and even if a report contains inaccuracies, the agency will escape liability if it establishes that the report was generated by following reasonable procedures). Therefore, plaintiff's claim that EMS did not produce the "backup" data does not relieve him of his obligation to establish that he contacted EMS to dispute the December 2005 credit highlight report prior to bringing this

---

"backup" data it had which it had used to prepare plaintiff's credit highlight report. Defendant's counsel stated that he retrieved the backup data and sent it to plaintiff, and that he would resend plaintiff a copy. See September Transcript at 3, 9. Plaintiff, who stated he had not received any information from defendant, was directed to call defendant's counsel if he did not receive the documents. Id. at 14.

action. See Document 62 at 10.

Finally, plaintiff states that "[i]n court the [p]revious attorney for EMS admitted that I wrote them many times but stated that they checked with Chase bank etc. and confirmed that I owe what they were reporting." Pl. Reply at 2. He also states that "they admitted on the record on various occasions that I contacted them disputing the amount owed." See Document 62 at 2. Plaintiff's claim that EMS admitted that he had disputed the information on his credit report prior to commencing this action is not supported by the record. Moreover, EMS submits the declaration of Michael Tusevicus, the Director of Operations for Equifax Mortgage Solutions who states that "I have reviewed Equifax's records concerning the credit history and handling of plaintiff's credit file" and "plaintiff did not dispute any accounts on his credit file with EMS." Declaration of Michael Tusevicus in Support of Motion for Summary Judgment ¶¶ 2, 6. As plaintiff only repeats that he notified defendant of inaccuracies on his credit report "on at least ten occasions over many years" but has not proffered evidence that would allow a reasonable jury to find that he notified EMS that he disputed the accuracy of its credit report, EMS is entitled to summary judgment on plaintiff's claims under 15 U.S.C. § 1681e(b).

### III.  Plaintiff's 15 U.S.C. § 1681i Claim

Plaintiff's claims under 15 U.S.C. § 1681i should be dismissed for the same reasons. 15 U.S.C. § 1681i provides in relevant part,

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . .

12

15 U.S.C. § 1681i(a); see Caltabiano v. BSB Bank & Trust Co., 387 F.Supp.2d 135, 140 (E.D.N.Y. 2005) (prior to being notified by a consumer, a credit reporting agency has no duty to investigate a dispute). Here, plaintiff has not demonstrated that he ever disputed the inaccuracies on his credit report to EMS prior to filing the instant action. Therefore, EMS is entitled to summary judgment on plaintiff's claim under 15 U.S.C. § 1681i.

## IV. Plaintiff's 15 U.S.C. § 1681h(e) Claim

Plaintiff alleges that EMS violated 15 U.S.C. § 1681h(e). This section provides in relevant part as follows:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). This Court has defined "malice" in the context of the FCRA in the same terms as in an action for libel. Whelan 862 F. Supp. at 833; see also Cadet v. Equifax Credit Services, No. 05-cv-4843, 2008 WL 189873, at *5 (E.D.N.Y. Jan. 18, 2008). A report will be deemed to have been made with malice "if the speaker knew it was false or acted with reckless disregard of its truth or falsity." Id. This Court has interpreted "willful" in the context of the FCRA to "require a showing that the agency knowingly and intentionally committed an act in conscious disregard for the rights of others." Id. (citations and internal quotations omitted); see also Casella, 56 F.3d at 476 (finding that defendant's actions did not support the kind of "conscious disregard" or "deliberate and purposeful" actions necessary to make out a claim for willful noncompliance under the FCRA).

13

Plaintiff presents no evidence that EMS knew that plaintiff disputed information; therefore, plaintiff cannot demonstrate that EMS acted willfully or maliciously to furnish information to injure him. See Whelan 862 F. Supp. at 834 (defendant cannot act with the requisite intent given that it was not on notice that its report contained inaccurate information). Thus, defendant's motion for summary judgment should be granted as to plaintiff's claim under 15 U.S.C. § 1681h(e).

## V.     Plaintiff's Request for Damages under 15 U.S.C. §§ 1681n-o

Plaintiff states that he is entitled to damages under 15 U.S.C. §§ 1681n-o. The FCRA provides a private right of action against credit reporting agencies for the negligent or willful violation of duties imposed under the statute. See 15 U.S.C. §§ 1681n-o. A credit reporting agency is liable for actual damages sustained by the consumer as a result of the violation, as well as the costs of the action and reasonable attorney's fees in the case of a successful action to enforce liability. Id. In the case of willful noncompliance, the credit reporting agency may also be subject to punitive damages. 15 U.S.C. § 1681n.

Here, plaintiff fails to demonstrate that he notified EMS about the allegedly inaccurate information on his credit report prior to filing the instant action. This lack of notice is fatal to plaintiff's negligence claim under the FCRA. See Casella, 56 F.3d at 473; Whelan, 862 F.Supp. at 830. Thus, plaintiff is not entitled to actual or punitive damages or attorneys' fees under 15 U.S.C. §§ 1681n-o.

## VI.    Plaintiff's Motion under Fed. R. Civ. P. 56(c), 12(f), 11(b).

Plaintiff cross-moves pursuant to Fed. R. Civ. P. 56(c) for summary judgment, and moves

to strike pursuant to Fed. R. Civ. P. 12(f). Plaintiff's motion papers restate the standards for summary judgment and to strike, but proffer no legal or factual support for these motions. Moreover, plaintiff's motion titled "Notice of Motion for Summary Judgment Rule 11 Violation Strike Pleading Fed. R. Civ. P. 56(c), 12(f), 11(b)" only relates to his motion for sanctions pursuant to Fed. R. Civ. P. 11(b). Therefore, the Court denies plaintiff's motion to strike and recommends that plaintiff's cross-motion for summary judgment should be denied.

Plaintiff argues that under Fed. R. Civ. P. 11(b), the Court should impose sanctions on EMS' attorney Stephanie Cope. Under Fed. R. Civ. P. 11(c), " If . . . after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Plaintiff claims that sanctions are appropriate because Ms. Cope lied to the Court by admitting on numerous occasions that plaintiff wrote to "Mortgage Inc." and then later claiming that plaintiff "never wrote Mortgage inc." In support of his motion, plaintiff attaches several certified mail receipts. See Plaintiff's Motion pursuant to Fed. R. Civ. P. 56(c), 12(f), 11(b) Exhibit A. These mail receipts do not demonstrate that Ms. Cope lied to the Court. Plaintiff provides no further support for his motion. Moreover, plaintiff failed to comply with Fed. R. Civ. P. 11(c) which requires the movant to contact the adversary prior to filing a Rule 11 motion. Therefore, plaintiff's motion for sanctions is denied.

## CONCLUSION

Accordingly, defendant's motion for summary judgment should be granted, and plaintiff's cross-motion for summary judgment should be denied. Plaintiff's motions for sanctions and to strike are denied.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F. 2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
_____
LOIS BLOOM
United States Magistrate Judge

Dated: September 2, 2008
       Brooklyn, New York